IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRINCETON OPHTHALMIC, LLC, | : HON. |
| Plaintiff, | : Civil No. |
| v. | : |
| CORINTHIAN OPHTHALMIC, INC., SKIP BALLOU, SEAN IANCHULEV, DR. ERNEST MARIO, DR. FRED N. ESHELMAN, DR. MARK PACKER, JOHN R.M. HAND, and JOHN DOES 1-100, | : **COMPLAINT AND JURY DEMAND** |
| Defendants. | : |

Plaintiff, Princeton Ophthalmic, LLC, a limited liability corporation of the State of New Jersey, located at 9 Grace Hill Court, Titusville, New Jersey, by way of Complaint against the above-named defendants, says that:

## I. NATURE OF THE ACTION

1. This is a securities fraud action, arising out of misrepresentations made by the defendants to Plaintiff Princeton Ophthalmic, LLC, in connection with the sale to it of 19,900 shares of the common stock of Defendant Corinthian Ophthalmic, Inc., in June of 2012, for a purchase price of $1,990,000.

2. As explained below, at the time Plaintiff agreed to purchase its shares of the stock of Defendant Corinthian Ophthalmic, Inc., Defendants represented to plaintiff, both orally and in writing, that defendant Corinthian was the owner of a proprietary ocular drug delivery device ( its so-called "Whisper" device), with working models that had proven its

1

ability to deliver ocular drugs to the eye with a level of consistency, efficiency, and patient comfort far superior to that of a conventional eye dropper.  In fact, however, at all times hereinafter mentioned, the Defendants either knew, or recklessly failed to determine, that those representations were false, misleading, and/or deceptive, and that the said "Whisper" device was not only unproven, but was actually *defective*, and had proven its *inability* to provide the benefits claimed by Defendants.

3. Plaintiff brings this for recovery of compensatory damages, either by way of rescission, or based upon the difference between the $1,990,000 paid by it for the stock of Defendant Corinthian, and the actual value of the said stock, at the time of its purchase.

## II. JURISDICTION AND VENUE

4. This action arises under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§78j(b) and 78t), and Rule 10b5 promulgated thereunder (17 C.F.R. §240.10b5); as well as applicable principles of the statutory and common laws of the State of New Jersey.

5. Jurisdiction over this matter resides in this Court pursuant to 28 U.S.C. §1331 (federal question jurisdiction); 28 U.S.C. §1337 (interstate commerce); Section 27 of the Exchange Act (15 U.S.C. §78aa); and principles of pendent federal jurisdiction of state law claims.

6. In connection with the acts and conduct alleged, defendants directly and/or indirectly used means and instrumentalities of interstate commerce including, but not limited to, interstate wire and telephone communications, the United States mail, and facilities of national securities markets.

7. Venue is this matter is proper in this district court pursuant to 15 U.S.C. §77v(a) and 15 U.S.C. §78aa in that several defendants are found, are inhabitants of, and/or transact business in this district; and many offers and sales of securities involved in this action took place in the district; pursuant to 28 U.S.C. §1391(b) in that a substantial part of the actions or omissions giving rise to these claims arose in this district.

### III. PARTIES

8. Plaintiff Princeton Ophthalmic, LLC ("Princeton"), is a limited liability corporation of the State of New Jersey, formed by New Jersey physicians and medical practitioners for the sole purpose of purchasing shares of stock in Corinthian Ophthalmic, Inc. Significantly, at least two of the members of Princeton are ophthalmologists, whose agreement to cause Princeton to purchase shares of the stock of Defendant Corinthian Ophthalmic, Inc. was motivated, in part, by their desire to assist in advancing medical science in the field of ophthalmology.

9. Defendant Corinthian Ophthalmic, Inc. ("Corinthian"), is a corporation of the State of North Carolina with its principal place of business in Boone, North Carolina.

10. Defendants Skip Ballou, Sean Ianchulev, Dr. Ernest Mario, Dr. Fred N. Eshelman, Dr. Mark Packer, John R.M. Hand, and were the officers and/or Directors of Defendant Corinthian, at the time of the purchases of stock that form the subject matter of this Complaint. Upon information and belief, Defendants Ballou, Ianchulev, Mario, Eshelman, Packer, and Hand are residents of the States of North Carolina and New Jersey.

11.     Defendants John Does, 1-100, are individuals and/or corporations whose exact identities are unknown to Plaintiff, but who were participants in the communication of some or all of the misrepresentations and omissions of material fact

## IV. FACTUAL ALLEGATIONS

12.     In or about March of 2012, Defendant Skip Ballou contacted Chetan Shah, M.D., Princeton's Managing Member, to solicit the sale to Princeton of shares of the common stock of Defendant Corinthian, at a price of $100 per share.

13.     At the time Princeton's managing member, Chetan Shah, M.D., was first approached by Defendant Ballou, and at all relevant times thereafter, he was advised by him that Defendant Ballou was the President of Defendant Corinthian Ophthalmic, Inc., and that Defendant Corinthian was the owner of a proprietary ocular drug delivery device known as the "Whisper" device. Defendant Ballou advised Dr. Tyson and Dr. Shah that Defendant Corinthian's "Whisper" device had the ability to deliver ocular drugs to the eye with a level of consistency, efficiency, and patient comfort far superior to that of a conventional eye dropper.

14.     Later in the Spring of 2012 Dr. Shah met with Defendant Ballou in Mercer County, New Jersey, and Ballou showed to Dr. Shah a device he represented to be a "working prototype" of Defendant Corinthian's "Whisper" device. Defendant Ballou advised Dr. Shah that the product was "ready" for use, that there was substantial interest in the product on the part of the manufacturers of ocular drugs, and that in fact there was a "bidding war" either in progress, or about to begin, because of the "uniqueness" of the product.

15.     During this same meeting, in the late Spring of 2012, Defendant Ballou advised Dr. Shah that the Whisper device had been shown at various trade shows and at meetings with ocular drug manufacturers, and that there was a great deal of interest in the device.  Dr. Shah expressed the belief that, at $100 per share, the price being asked for purchase of shares of Corinthian stock was "too high."  Defendant Ballou advised him, however, that the price was a good one because "there was no more risk in the device," since "the product was complete," and all that remained was for the product to be marketed.

16.     Over the Memorial Day Weekend of 2012, Defendant Sean Iancheluv participated in a conference call with Dr. Sydney Tyson and Dr. Chirag Shah, two members of Princeton Ophthalmic, in which there was further discussion between them regarding the potential for an investment by Plaintiff Princeton in Corinthian, through the purchase of shares of stock in Corinthian at the price of $100 per share.  During that conference call, Defendant Iancheluv again emphasized that the Whisper device was a "finished product," and he referenced testing of the product that had been successfully completed in Mexico.  In addition, he advised Dr. Tyson and Dr. Chirag Shah that glaucoma drop testing and validation was also near completion.

17.     In addition to these oral misrepresentations provided to Plaintiff by Defendant Corinthian, through the statements made to Plaintiff, its members, and its managing member, Chetan Shah, M.D., by Defendants Ballou and Iancheluv, all Defendants also provided misrepresentations to Plaintiff in writing, through an "Offering Circular" and Corinthian "Business Plan" provided to Plaintiff, its members, and its managing member at or before the purchase by Plaintiff of its stock in Corinthian.

18. Significantly, as was done in their oral statements, in the written materials provided to Plaintiff, its members, and its managing member as well, Defendants repeatedly emphasized that the Whisper device was effectively a completed, working product. For example, in an "Offering Circular" provided to Plaintiff, at or prior to the time of its purchase of the shares of stock in Corinthian referred to herein, Defendants asserted, <u>inter alia</u>, that:

> "…Corinthian's novel WHISPER™ device <u>utilizes</u> a proprietary fluid ejector mechanism and optical alignment to easily and conveniently deliver micron-sized droplets <u>in consistent and repeatable levels</u> of dosing with little or no sensation to the patient, with little or no stinging or tearing.
>
> "…Corinthian believes the WHISPER™ device <u>is a powerful improvement</u> in the delivery of anti-glaucoma, anti-allergic, anti-inflammatory and anti-infection ocular drugs, surgical ocula-drugs (anesthetics, post-operative antibiotics, and dilators) and OTC medications (anti-redness, dry-eye lubricants and wetting agents.

Corinthian Offering Circular of March 29, 2012, at 6 (Exhibit A) (emphasis supplied)

> "…the WHISPER™ device <u>stands alone on the competitive landscape in its synthesis of efficacy, user appeal, technological sophistication, and low projected unit cost</u> in high volume production."
>
> <u>Corinthian's rapid development, testing and refining</u> of its WHISPER™ device has been driven by a highly qualified and MD/PhD-intensive Board of Directors, Medical Advisory Board, business and medical advisors, ophthalmologists, scientists, technologists, mechanical engineers, analog and digital electronics engineers, optics experts, manufacturing managers, product designers and legal counsel.

Corinthian Offering Circular of March 29, 2012, at 9 (Exhibit A) (emphasis supplied)

Similarly, in the Corinthian Business Plan, also furnished to Plaintiff prior to its investment in Corinthian, Defendants asserted, <u>inter alia</u>, that:

> In Corinthian's CODET dilation study, the Company demonstrated that its WHISPER™ Device delivered equivalent dilation to that of an eye drop delivered by an eyedropper using only $1/4^{th}$ of the dosage volume of an eye drop.
>
> …the WHISPER™ device <u>can dose in microliter volumes, seals the drug being delivered within an internal and non-permeable collapsible reservoir,</u> and has a structurally recessed ejector aperture that prevents direct contact of the drug with the

> user's fingers or eye…

Corinthian Business Plan of March 29, 2012, at 5-6 (Exhibit B) (emphasis supplied)

> The WHISPER™ device, <u>with its ability to dose such small amounts of drug to the cornea, without irritation, opens a new realm of therapy</u>…<u>The ability of the WHISPER™ device to not only deliver 0.5ul-10ul precisely, but to do so conveniently, with a re sable/repeatable delivery device has been remarkable</u>. The lack of irritation to the cornea has reduced blink and tearing responses.

Corinthian Business Plan, Appendix at 73, ¶ 4. **DISCUSSION**

19. In reliance upon these representations by Defendants, made by them both individually and collectively through the circulation of Defendant Corinthian's "Offering Circular," and its "Business Plan," on or about June 8, 2012 Plaintiff purchased 10,000 shares of the common stock of Defendant Corinthian, at the price of $100 per share, for a total price of $ 1 million. In addition, in reliance upon these same representations by Defendants, on or about June 15, 2012 Plaintiff purchased an additional 9,900 shares of the common stock of Defendant Corinthian, also at the price of $100 per share, for an additional $990,000. As a result, Plaintiff paid to Corinthian a total of $1,990,000, for purchase of 19,900 shares of its common stock in reliance, <u>inter alia</u>, upon the representations set forth above.

20. Nevertheless, on or about March 25, 2013, Plaintiff received a letter from Defendant Dr. Fred N. Eshelman, in his capacity as President and Chief Executive Officer of Corinthian, advising Plaintiff and the other Corinthian shareholders, <u>inter alia</u>, that:

> …The way forward may include more time and expense than we had originally anticipated…
>
> On March 14, <u>I was notified that there were major leakage problems with the device, and that none of the drugs (except basically saline/water) passed the tests</u>…
>
> I met with one of the engineers in Raleigh on March 18 to review the situation in detail. <u>It seems that the drugs were never tested in the sealed device but were only</u>

7

>    done on open reservoir conditions.  In addition, it appears that <u>a Board-approved piece of equipment needed for pre-qualification was never purchased</u>…
>
>    If Corinthian <u>can</u> produce a complete, working device which passes all functional tests and <u>can</u> be manufactured at scale within cost constraints, I continue to believe that there is value here.

See Eshelman Letter of March 25, 2013 (attached hereto as Exhibit C) (emphasis supplied).

21.     The information contained in this letter was extraordinary for several reasons.  To begin with, as noted above, beginning at least as early as March of 2012, about a year *before* this letter was provided to Plaintiff, and on numerous occasions thereafter between March and June of 2012, when Plaintiff completed its purchase of 19,900 shares of Corinthian stock at a price of almost $2 million, the representation had been made to Plaintiff, its members, and its managing member over and over, both orally and in writing, that Corinthian's WHISPER™ device already *was* a "complete, working device," or words to that effect.  The representation had also been made to Plaintiff, its members, and its managing member over and over, both orally and in writing, that the WHISPER™ device effectively had already *passed* "all functional tests," and had demonstrated that it could be "manufactured at scale within cost constraints."  As a result, upon receipt of the letter from Defendant Eshelman dated March 25, 2013, Plaintiff knew that the sale to it of 19,900 shares of Corinthian stock, for a price of almost $2 million, had been predicated upon numerous misrepresentations and omissions of material fact.

## V. **FIRST CLAIM FOR RELIEF**

(Section 10(b) of the Securities Exchange Act of 1934)

22. Plaintiff re-alleges and specifically incorporates herein by reference the allegations contained in Paragraphs 1 through 21 of this Complaint.

23. This Claim is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b5 promulgated thereunder, and is asserted by plaintiffs against all of the Defendants named herein.

24. At all times relevant, the Defendants, singly and in concert, engaged in, and aided and abetted a plan, scheme and unlawful conspiracy and course of conduct, pursuant to which they knowingly and recklessly engaged in acts, transactions, practices, and courses of conduct which operated as a fraud upon plaintiffs, and made various untrue statements of material facts and failed to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading to plaintiffs. The purpose and effect of said scheme was and is to, among other things, induce plaintiffs to effectuate the purchase of shares of stock in Corinthian, in amounts far above the true market value of those interests, so as to enrich defendants, at the expense of and detriment to Plaintiff.

25. At all relevant times, Defendants, pursuant to said plan, scheme and unlawful conspiracy and course of conduct, and in violation of their (or the controlled person's) duty to Plaintiff, knowingly or recklessly issued and/or caused to be issued, and participated in, the issuance of the false and misleading statements, designed to solicit Plaintiff's consents to the purchase of the stock of Defendant Corinthian, and failed to disclose material facts to the

Plaintiff which would have resulted in Plaintiff withholding its consent to the said purchases of Corinthian stock.

26. By virtue of the foregoing acts, Defendants have violated and/or aided and abetted violations of Section 10(b) of the Exchange Act and Rule 10b5 promulgated thereunder, in that they, or a person whom they controlled: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of conduct which operated as a fraud or deceit upon the Plaintiff, in connection with the solicitation of Plaintiff's consent to the purchase of 19,900 shares of Corinthian stock for a price of $100 per share, of the assets of their Corinthian partnership interests.

27. In ignorance of the false and misleading nature of the misrepresentations and omissions described above, Plaintiff relied, to its detriment, upon the materially false and misleading statements referred to herein. As a direct and proximate result of Defendants' wrongful conduct, the Plaintiff suffered substantial damage.

WHEREFORE, Plaintiff prays for the relief as hereinafter set forth.

## VI. SECOND CLAIM FOR RELIEF

(Section 20(a) of the Securities Exchange Act of 1934)

28. Plaintiff re-alleges and specifically incorporates herein by reference the allegations contained in Paragraphs 1 through 27 of this Complaint.

29.     This Claim is based upon Section 20(a) of the Exchange Act, 15 U.S.C. §78t, and is brought by Plaintiffs against Defendants Skip Ballou, Sean Ianchelev, Dr. Ernest Mario, Dr. Fred N. Eshelman, Dr. Mark Packer, John R.M. Hand, and Eric Hunter

30.     By reason of the conduct detailed above, these Defendants, and each of them, directly or indirectly, possessed the power to direct or cause the direction of the management and policies of Defendant Corinthian.  Moreover, these Defendants knowingly and/or recklessly exercised that power, to provide substantial assistance to the other Defendants, including Defendant Corinthian, in the above-referenced violations of Section 10(b) of the Exchange Act, and Rule 10b-5.  Accordingly, each such Defendant is liable under Sections 10(b) of the Exchange Act and Rule 10b5 promulgated thereunder, in connection with the Solicitation of Consents to the purchase by Plaintiff of the stock of Defendant Corinthian.  As a direct and proximate result of the wrongful conduct of these Defendants, Plaintiff suffered substantial damage as a result of the sale to it of the stock of Defendant Corinthian.

WHEREFORE, Plaintiff prays for the relief as hereinafter set forth.

## VII. THIRD CLAIM FOR RELIEF

(Fraud and Deceit)

31.     Plaintiff re-alleges and specifically incorporates herein by reference the allegations contained in Paragraphs 1 through 30 set forth above.

32.     Plaintiff asserts this Claim against all Defendants, for activities they engaged in during all relevant time periods referred to herein.

33.     Beginning in or about March of 2012, Defendants commenced a common scheme, plan and conspiracy that continues to date.  The primary purpose and effect of the

Defendants' conspiracy and scheme was to fraudulently induce Plaintiff to purchase the shares of stock in Corinthian referred to herein, at prices far above their true market value, all for the purpose of generating huge and substantial profits for the Defendants themselves, at the cost and expense of the Plaintiff. Defendants, and each of them, actively participated in and/or aided and abetted acts in furtherance of this conspiracy including, among other things, inducing Defendant Corinthian to breach its fiduciary duties to Plaintiff, and using Defendant Corinthian, as well as Corinthian Securities, as vehicles for disseminating false and misleading statements in offering materials, and in the Offering Circular relating to the purchase of interests in the common stock of Corinthian.

34. The Defendants, individually and in concert, directly and indirectly engaged in, and aided and abetted a common plan, scheme, and continuing course of conduct and conspiracy. In so doing, defendants knowingly engaged in acts and transactions to misrepresent and/or omit material facts in their Offering Circular and Business Plan, as set forth above, which operated as a fraud and deceit upon the limited partners, including plaintiffs, and the plaintiff class.

35. The materially false and misleading statements and omissions made to Plaintiffs at the time of the purchase of the stock of Defendant Corinthian, and in the Offering Circular relating to its purchase of stock in Corinthian, were made by Defendants, and each of them, with an intent to deceive or defraud Plaintiff, or to aid and abet the deception and defrauding of Plaintiff. The purpose and effect of Defendants' scheme and conspiracy to defraud was to induce Plaintiff to invest almost $2 million dollars in the purchase of Corinthian stock, so that defendants could earn substantial profits by reason of

such sale, at the cost and expense of Plaintiff.  Said acts by Defendants were fraudulent, oppressive, deceitful, and malicious.

36. Plaintiff, at the time of said misrepresentations and omissions, was necessarily ignorant of these omissions and misrepresentations of material facts, which it believed to be true.  In reliance upon the superior knowledge of the Defendants, Plaintiff invested in Corinthian stock pursuant to a false promise of the opportunity for returns on its funds invested.  If Plaintiff had known the true facts, Plaintiff would never have purchased its share of stock in Corinthian  to begin with.  By reason thereof, Plaintiff has suffered, and will continue to suffer, substantial damages.

37. Defendants had a duty to fully disclose to plaintiffs, all material facts concerning the assets owned, or to be purchased by Defendant Corinthian, and/or to be sold by it.

38. In ignorance of the false and misleading nature of the misrepresentations and omissions made to it by the said Defendants, Plaintiff has relied, to its damage, on the false, misleading and deceitful misrepresentations made to it by the Defendants at the time of its purchase of its shares of stock in Corinthian.

WHEREFORE, Plaintiff prays for the relief as hereinafter set forth.

## VIII. FOURTH CLAIM FOR RELIEF

(Negligent Misrepresentation)

39. Plaintiff re-alleges and specifically incorporates herein by reference the allegations contained in Paragraphs 1 through 38 of this Complaint.

40.     This claim is asserted against all Defendants, for negligent misrepresentation and negligence.

41.     Each of the Defendants made misrepresentations of material facts, and omitted to make material disclosures to plaintiffs through the preparation, publication and dissemination of the Offering Materials utilized to effectuate the sale of Corinthian stock to.

42.     In making said omissions and representations, as well as those described throughout this Complaint, all Defendants omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, and made misrepresentations of material fact.  Among the direct and proximate causes of said misrepresentations and omissions was the negligence and carelessness of these defendants.

43.     At the time of said misrepresentations and omissions, Plaintiff was ignorant of their falsity and believed them to be true.  In reasonable and foreseeable reliance upon said misrepresentations, and in reliance upon the superior knowledge and expertise of these Defendants, and in ignorance of the true facts, the plaintiff was induced to expend almost $2million for the purchase of 19,900 shares of Corinthian stock.  Had the Plaintiff known the true facts, it would not have taken such action.

44.     As a reasonably foreseeable consequence of such misrepresentations and omissions, Plaintiff's purchases of Corinthian stock were consummated, in June of 2012.

45.     As a result of such negligence, all of the plaintiffs have suffered, and will continue to suffer damages.

WHEREFORE, Plaintiff prays for the relief as hereinafter set forth.

## IX. SEVENTH CLAIM FOR RELIEF

(For Imposition of Constructive Trust)

46. Plaintiff incorporates by reference paragraphs 1 through 45 set forth above.

47. This Claim is asserted against all Defendants, with respect to any and all of the substantial monies obtained from Plaintiff by any and all Defendants by virtue of fraud, breach of fiduciary duties and/or negligence in connection with their fraudulent sale of Corinthian stock to Plaintiff.

48. Plaintiff reposed trust and confidence in the Defendants as fiduciaries in the management and operation of Defendant Corinthian. As a result of their relationship with and control over Defendant Corinthian, all Defendants assumed positions of trust with respect to the stockholders of Defendant Corinthian, as well as to Defendant Corinthian itself. All proceeds paid, and/or purportedly payable to any of the Defendants in connection with the sale of Corinthian stock to Plaintiff, have been procured in breach of trust.

49. Plaintiff is the true, sole and equitable owner of those proceeds paid to any and all Defendants in connection with the purchase of its stock in Corinthian. Plaintiff's equitable interests in those proceeds are therefore superior to all others.

50. Defendants, and each of them, participated in, and aided and abetted, the abovedescribed securities laws violations and other wrongful acts with the express intent to obtain monies rightfully belonging to Plaintiff. As a direct and proximate result of Defendants' wrongful conduct and breaches of trust, Defendants wrongfully acquired substantial sums of monies rightfully belonging to Plaintiff, and of which Defendants are now constructive trustees.

51. The defendant have no legal or equitable right or interest in any funds rightfully belonging to the Plaintiff, and are constructive trustees of such funds, owing a duty to transfer same to Plaintiff.

52. The defendants are, therefore, also constructive trustees of:

a. All commissions received as a result of the purchase of Corinthian stock by Plaintiff.

b. All management and other salaries and/or fees received from Corinthian, including those authorized, and those not authorized by the articles of incorporation and/or other governing documents of Defendant Corinthian.

c. All other revenue received by the Defendants, as a result of the wrongful acts complained of herein.

53. Plaintiffs hereby assert their equitable interests, as described above, and demand the imposition of a constructive trust as to all proceeds so described.

WHEREFORE, Plaintiff prays for the relief as hereinafter set forth.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants and each of them, jointly, severally, or in the alternative, as follows:

A. Awarding Plaintiff compensatory damages, in the amount of $1,990,000, or such other amount as may be proved at trial, together with prejudgment and post-judgment interest.

B. Awarding Plaintiff punitive damages, by reason of the wanton, malicious, intentional and/or reckless nature of the wrongs perpetrated against it.

C.  Declaring a constructive trust upon all funds paid or payable to any and all of the Defendants in connection with the purchase by Plaintiff of its shares of stock in Corinthian, in June of 2012;

D.  Requiring an immediate and full accounting of all transactions consummated by any of the Defendants, with respect to the assets of Defendant Corinthian.

E.  Awarding plaintiffs such other and further relief as this Court may deem proper and just.

LAW OFFICES OF G. MARTIN MEYERS, P.C.<br>
ATTORNEYS FOR PLAINTIFF

Dated:  September 3, 2014		By:  /s/   G. Martin Meyers   _
                                      G. Martin Meyers, Esq.  (#5833)


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues as allowed by law.

LAW OFFICES OF G. MARTIN MEYERS, P.C.<br>
ATTORNEYS FOR PLAINTIFF

Dated:  September 3, 2014		By:  /s/   G. Martin Meyers   _
                                      G. Martin Meyers, Esq.  (#5833)