RECEIVED AUG 3 0 2018 AT 8:30 WILLIAM T. WALSH CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PRINCETON OPHTHALMIC, LLC,

    Plaintiff,

v.

CORINTHIAN OPHTHALMIC, INC., *et al.*,

    Defendants.

Civil Action No. 14-5485 (PGS)(DEA)

**OPINION**

    This matter comes before the Court on a motion by Plaintiff [ECF No. 109] for leave to file a second Amended Complaint ("SAC"). The Court decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, Plaintiff's motion is denied.

I. Background

    This is a securities fraud action brought pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, as well as state statutory and common law. Plaintiff's claims arise out of alleged misrepresentations made by Defendants to Plaintiff in connection with the sale of shares of common stock of Defendant Corinthian Ophthalmic, Inc. ("Corinthian"). Plaintiff purchased a total of 19,900 shares of Corinthian's common stock for $1,990,000 in two separate transactions in June of 2012. *See* Amended Complaint ¶ 62 at ECF No. 35. The purchase was made as part of a private stock offering seeking to raise approximately $4 million. ECF No. 109-1 at 2. According to Plaintiff, the price it paid for the shares was improperly inflated due to alleged misrepresentations made by Defendants about the status of an ocular medication delivery device being developed at that time by Corinthian. Plaintiff states that but for the alleged misrepresentations, it would not have completed any

purchase of Corinthian stock or, if it had done so, it would only have paid only a fraction of what was actually paid. ECF No. 35 at ¶ 63.

Shortly after Plaintiff's purchase of Corinthian stock, all assets of Corinthian were acquired by Defendant Eyenovia, Inc. ("Eyenovia"). ECF No. 35 at ¶ 55. As a result, shares of Eyenovia were "exchanged" for the stock of Corinthian. *Id.* at ¶ 59. According to Plaintiff, this exchange was finalized in or about October 2015. *Id.*

On January 29, 2018, Defendants closed a $27.3 million initial public offering of stock in Eyenovia (the "IPO"). A statement dated March 28, 2018 shows that Plaintiff holds 89,539 shares in Eyenovia, which was valued at that time at $823,758.80. ECF No. 109-5.

Plaintiff filed the instant action in September 2014. It filed its Amended Complaint in November 2015. In December 2016, the parties advised the Court that fact discovery was complete and that expert reports had been served. ECF No. 75. The parties each filed summary judgment motions in April 2017, which were denied by the Court initially and upon reconsideration. The Magistrate Judge held a Final Pretrial Conference in January 2018, and a Final Pretrial Order was entered on January 23, 2018, scheduling trial for September 10, 2018 (which was later adjourned to September 20, 2018). ECF No. 108. The instant motion was filed May 23, 2018.

## II. Analysis

By way of the present motion, Plaintiff requests leave to file a second Amended Complaint to add a claim for damages in the form of the disgorgement of certain monies received by Defendants from the January 2018 public offering of stock in Eyenovia. Specifically, Plaintiff seeks to disgorge alleged "windfall" profits that Plaintiff contends were obtained by Defendants by way of the IPO. The theory of Plaintiff's proposed amended claim for

2

relief is as follows: Princeton was issued 89,539 shares of Eyenovia stock. Plaintiff alleges that the price for the Corinthian stock which Plaintiff purchased was inflated by at least a factor of ten. As such, Plaintiff claims that Defendants should have tendered to Plaintiff ten times the number of Corinthian shares which, presumably, would have led to Plaintiff being issued ten times the number of shares of Eyenovia stock. Therefore, according to Plaintiff, instead of being issued 89,539 shares of Eyenovia, Plaintiff should have been issued 895,390 shares. Given the number of shares of Eyenovia that were actually issued to Plaintiff, Plaintiff argues that Defendants have allegedly "reaped windfall profits" equal to the market value of the approximately 806,000 shares of Eyenovia (895,390 minus 89,539) "retained" by Defendants.

Plaintiff argues that it seeks leave to amend "merely … to conform the Complaint to newly acquired evidence." ECF No. 109-1 at 4. Plaintiff states that it does not seek to assert a new cause of action, but rather to assert the remedy of disgorgement as an element of damages. According to Plaintiff, because the motion is made in response to a new factual development, it is not "grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed, or futility of amendment." *Id.* at 5.

Defendants oppose Plaintiff's motion, arguing that Plaintiff's motion is untimely and futile. As to timing, Defendants contend that Plaintiff should not be permitted to add a new theory of recovery this late in the case, as the facts underlying the proposed amendment have been known since the inception of the case. Further, Defendants contend that under the relevant legal standard, Plaintiff is not entitled to the disgorgement remedy it seeks.

Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally granted freely "when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d

107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

This case is in its latest stages; trial is scheduled for next month. As such, the Court must necessarily examine the question of undue delay. Plaintiff filed the instant motion two and one-half years after filing the first Amended Complaint, a year and a half after fact discovery was completed, a year after expert discovery and dispositive motion practice, five months after the final pretrial order was entered and less than four months prior to the trial date. "[W]hile bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that [the Court] focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

Plaintiff alleges it could not have asserted the remedy of disgorgement any earlier in this case because Plaintiff's claim is based on facts that did not occur until early 2018. The Court disagrees. The central theory of Plaintiff's disgorgement claim is that, as a result of their alleged fraud, Defendants were able to "retain" shares of stock that would have otherwise been sold to Plaintiff had the shares been valued properly. Plaintiff alleges that because the shares it received were overpriced by a factor of 10, Plaintiff should have received ten times the number of shares it actually received. This difference between what Plaintiff received and what Plaintiff alleges it should have received is what Defendants are alleged to have improperly retained. That Defendants retained such value would have been known to Plaintiff at the outset of this case. Yet

4

at no time did Plaintiff seek any remedy based on this fact. Instead, Plaintiff's theory of damages from the outset of this case has been directed toward being reimbursed the monies it paid, not "disgorging" Defendants of value they allegedly wrongfully retained. *See* ECF No. 35 at ¶ 2 ("Plaintiff brings this action ... for recovery of compensatory damages, either by way of rescission, or based upon the difference between the $1,990,000 paid by it for the stock of Defendant Corinthian, and the actual value of the said stock, at the time of its purchase; and for recovery of punitive damages... .")

The Court recognizes that delay alone is an insufficient ground to deny leave to amend. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "However, at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party." *Id.* (quotations omitted). This is the situation here. This case has been pending before the Court for four years. Plaintiff filed its motion mere months before trial. Contrary to Plaintiff's assertions, if the Court were to permit Plaintiff to proceed with its new theory of damages, the trial would have to be adjourned, and fact and expert discovery would need to be reopened.[1] This places both an unwarranted burden on the Court and is prejudicial to the Defendants.

Disgorgement damages are based primarily on the theory that a defendant has been unjustly enriched. 6 Bromberg & Lowenfels on Securities Fraud § 8:7 (2d ed.). Until this very late stage of the case, Plaintiff made no claim to disgorge in any manner value that Defendants have allegedly wrongfully retained since the original transaction was consummated in 2012. The Court finds that this delay necessitates denial of Plaintiff's motion.

---

[1] According to Plaintiff, one of the elements that it would need to show in order to obtain disgorgement is that, absent Plaintiff's investment, Corinthian would not have survived to the point where the IPO could issue. To the Court's knowledge, no discovery has been taken on this issue, nor has any expert opined on the question.

5

The Court also finds that Plaintiff's proposed amendment fails on the grounds of futility. In support of its argument that disgorgement damages are appropriate in this case, Plaintiff cites a number of decisions that involve defrauded sellers of securities. Such cases generally involve situations where a party is induced by fraud into selling his securities for less than fair consideration. If a defrauding buyer then profits from the sale of the securities, such profits can be said to be the proximate consequence of the fraud, and damages in the form of disgorgement of the profits is permitted. *Affiliated Ute Citizens v. United States*, 406 U. S. 1284 (1972); *Thomas v. Duralite Co., Inc.* 524 F.2d 577 (3d Cir. 1975). The rationale for this is that "it is simple equity that a wrongdoer should disgorge his fraudulent enrichment." *Janigan v. Taylor*, 344 F.2d 781, 786 (1st Cir. 1965).

A key limitation to this remedy is that the defrauding party's profit must be a proximate consequence of the fraud. As one court observed, "[i]f an artist acquired paints by fraud and used them in producing a valuable portrait we would not suggest that the defrauded party would be entitled to the portrait, or to the proceeds of its sale." *Id.* at 787. Yet that is akin to what Plaintiff seeks here. Plaintiff argues that but for its 2012 investment, Corinthian would not have survived and there would have been no IPO. This is highly speculative and asserted in a conclusory fashion in the proposed SAC. Few, if any, facts are pled in the proposed SAC to support this assertion. As such, the Court finds that Plaintiff's proposed amendments would be futile, and Plaintiff's motion for leave to amend the Complaint will be denied. An appropriate Order accompanies this Opinion.

/s/ Peter G. Sheridan
Hon. Peter G. Sheridan
United States District Judge